Dear Mr. Pellerin:
You have requested an opinion of this Office regarding the impact of Act 949 of the 1997 Regular Session of the Louisiana Legislature ("Act 949") which regards the sale of preneed funeral goods and services. Specifically, you have asked the following questions:
 1) Does Act 949 effectively limit those authorized to engage in the writing of prearranged or prepaid burial or funeral services or merchandise contracts to only a licensed funeral establishment through its licensed funeral director?
 2) Is a funeral establishment that writes prearranged or prepaid burial or funeral services or merchandise contracts through its licensed funeral director acting as a co-insurer or insurer under the provisions of Title 22 of the Louisiana Revised Statutes?
 3) May a funeral establishment, through its licensed funeral director, guarantee a consumer that it will provide certain funeral services and merchandise at the time of need?
Before reaching your questions, several points of clarification are necessary regarding some of the more detailed aspects of prepaid funeral arrangements.
Act 949 of 1997 had as its purpose one very simple matter: The restriction of a limited and specifically defined class of funeral service policies, known as "burial insurance," that were viewed as inflexible and often were not capable of meeting consumers' needs upon the death of a loved one.[1] It is the opinion of this Office *Page 2 
that Act 949 did nothing more than restrict the sale of such policies and left in place various other methods for paying for preneed funeral goods and services using traditional insurance mechanisms.
As an initial matter, it is important to emphasize the distinction between a contract for prearranged funeral services and the use of life insurance as the method of funding for funeral services. Using life insurance to fund funeral services is a widely accepted practice across the United States. Such insurance usually consists of policies for small face amounts, typically $5,000 to $10,000, and are often issued to people of a higher age than other forms of life insurance policies. Without the ability to offer life insurance to fund funeral services in conjunction with a prearranged contract, consumers are restricted to depositing the payments for the funeral service contract with the specific funeral establishment[2] which, in turn, deposits those funds into either a joint account or an individual trust account. In contrast to these bank account options, a life insurance policy owned by the consumer is more portable. In other words, the life insurance policy is not tied to a particular funeral establishment and may be reassigned as the consumer wishes to fit their needs.
What did Act 949 of 1997 do?
In answer to your first question regarding the implications of Act 949 on the funeral industry, as was intimated above, we are of the opinion that that Act did not restrict the writing of prearranged funeral contracts to funeral directors. Neither does that Act restrict the writing of any insurance policy to cover the costs of prearranged funerals.
The relevant portion of Act 949 to this opinion request states that:
 No funeral service policies as described in R.S. 22:252, R.S. 22:253, R.S. 291(1), R.S. 22:332, and R.S. 22:337
shall be sold after twelve o'clock midnight July 31, 1997.
Act 949, Section 1. *Page 3 
This provision is fairly straightforward. "Burial insurance" is prohibited pursuant to this Act.[3] The prohibited policies are defined thus:
 Every funeral policy shall state the dollar value of the funeral to be furnished and shall specify therein those benefits which shall constitute the funeral to be furnished. If upon the death of the insured, the dollar value of the funeral to be furnished, as stated in the policy or policies, is less than the retail price of the funeral benefits specified in the policy or policies, the beneficiary shall be entitled to a cash payment which shall be equal to one hundred percent of the face amount of the policy or policies.
La.R.S. 22:253(A)(1). In effect, these now-forbidden policies meant that the policy holder could never receive the contracted-for goods and services if those goods and services, due to inflation or other economic factors, exceeded the face value of the policy. The best that the consumer could hope for was to apply the face value of the policy towards the current value of the goods and services that they had selected years before. Seeing the inequities of such a situation, the Legislature saw fit to repeal the authority to use such policies.
What the Legislature did not do with this Act is implicate other types of insurance policies that might be used to pay for funeral goods and services. The Legislature also did not, with this legislation, make any pronouncements regarding who could sell or make arrangements for funeral contracts.
Thus, in answer to your first question, it is the opinion of this Office that Act 949 is silent regarding who can write or arrange prearranged or prepaid funeral contracts. The Act simply restricts the use of "burial insurance," as described above. It does not restrict the writing of prearranged contracts to funeral directors and it does not prohibit the sale of life insurance used to fund funeral services.
Is a Funeral Establishment an Insurer or Co-Insurer?
It is the opinion of this Office that a funeral establishment does not become an insurer or co-insurer simply because it guarantees the future delivery of certain funeral services and funeral merchandise in return for the assignment of a policy of life insurance that will be used to pay the cost of the services and the merchandise at the time the prearranged contract is executed.
The fact that the funeral establishment contractually agrees to guarantee certain funeral services and merchandise in exchange for the assignment of the life *Page 4 
insurance policy does not convert the prearranged contract into an insurance policy. The funeral establishment is not agreeing to pay the policy owner anything under the life insurance policy.
It is important to point out that these two instruments are completely different. The prearranged contract is merely an agreement to provide certain goods and services for an agreed upon amount. This instrument binds the funeral establishment and the consumer to a certain set of terms, none of which have anything to do with insurance. The life insurance policy is a separate agreement that is used to fund the prearrangement contract. This instrument is insurance and is covered by Title 22 of the Louisiana Revised Statutes.
An insurer is defined as "every person engaged in the business of making contracts for insurance." La.R.S. 22:5(10). An insurance contract is defined as a contract "whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." La.R.S. 22:5(9)(a). Neither of these definitions is analogous to the definition of a prearranged funeral contract. Accordingly, prearranged funeral contracts are not insurance.[4] Thus, it is the opinion of this Office that funeral establishments that are parties to prearranged funeral contracts are not co-insurers or insurers by virtue of entering into those contracts.
Conversely, life insurance policies used to fund prearranged funeral contracts must be issued only by a duly licensed insurer that falls under the jurisdiction of the Commissioner of Insurance. Because of this fact, the funeral establishment does not assume the risk of paying the benefit upon the occurrence of death. Once again, the payment of the death benefit is made by a duly licensed insurer that is under the domain of the Commissioner of Insurance. Nothing in the prearrangement contract can be construed as an indemnity agreement or an obligation to pay a sum of money.[5]
Funeral establishments that are affiliated with an insurance company have been considered by the courts as separate entities.[6] Funeral establishments are in the business of providing funeral services, not insurance services. If funeral establishments are not engaged in the business of insurance then, by definition, they cannot function as an insurer or co-insurer under Louisiana law. *Page 5 
May a Funeral Establishment Guarantee Funeral Services and Merchandise?
This third question from your request largely builds off of question two. When a funeral establishment enters into a prearranged funeral contract with a consumer, certain goods and services are agreed upon for a certain price. That price does not change, regardless of outside forces such as inflation or other market factors. Thus, in effect, the contract guarantees that the funeral establishment will deliver these goods and services at the agreed-upon price when the consumer dies. However, as was stated above, this guarantee does not convert the relationship between the funeral establishment and the consumer into one based on insurance. Indeed, it is the opinion of this Office that the prearranged funeral services agreement is nothing more than a conventional obligation with a suspensive condition attached (the death of the consumer) and that it is governed by the obligations laws found in the Louisiana Civil Code. La.C.C. Arts. 1756, et seq.
Who Can Do What?
The ultimate question that you appear to be asking this Office to answer is: Who can sell insurance to be applied to prearranged funerals and who can make arrangements for the prearranged funerals?
As has been belabored at length above, it is the opinion of this Office that duly licensed insurers are the only parties that can sellinsurance that can be applied to prearranged funerals. This is, of course, exclusive of the now-prohibited "burial insurance" proscribed by Act 949. The proper insurance to be used in such situations is generally small life insurance policies.
The question of who can make arrangements for prearranged funerals is a completely separate matter. However, as this question is raised in your request letter, we here address the matter. We have received many letters during the preparation of this Attorney General's opinion that make clear that, especially in small and rural funeral establishments, such arrangements are made by employees of the funeral establishment who may not be licensed funeral directors. This practice is efficient and is not prohibited by law.
Prepaid funeral services or merchandise, under La.R.S. 37:861, may be sold only by a duly licensed funeral establishment. This section of the Revised Statutes says nothing at all about license requirements for those employees of the funeral establishment who might be doing the actual selling. The consumer protection that is built into this statute is that the establishments so selling must be licensed and they must do internal policing of their employees in order to maintain their license. Thus, it is the opinion of this Office that, as long as the person selling prepaid funeral services or merchandise is an employee of a duly *Page 6 
licensed funeral establishment and is selling such things in the course and scope of that employment, such is permissible under the law.
We hope this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: __________________________ RYAN M. SEIDEMANN Assistant Attorney General
 CCF, Jr./RMS/tp
[1] See e.g., Rabenhorst Funeral Home, Inc. v. Tessier, 674 So.2d 1164,95-1088 (La.App. 1 Cir. 5/10/96); Galjour v. Security IndustrialInsurance Co., 618 So.2d 516 (La.App. 4th Cir. 1993).
[2] The term, "funeral establishment," as used in this opinion is identical to the term as defined in La.R.S. 37:831(37). That statute defines a funeral establishment as:
 any place or premises duly licensed by the board and devoted to or used in the care and preparation for burial of the body of a deceased person or maintained or held out to the public by advertising or otherwise as the office or place for the practice of funeral directing.
Id.
[3] "Burial insurance" was also sometimes referred to as "funeral service policies." This is the source of the definitions used herein. However, in the interest of clarity, the term "burial insurance" is used throughout this opinion to refer to all types of insurance prohibited by Act 949.
[4] The Fifth Circuit has specifically recognized that the providing of goods and services by funeral establishments does not constitute the business of insurance. Battle v. Liberty Nat. Life Ins. Co., 493 F.2d 39,50 (5th Cir. 1974).
[5] See also, La. Atty. Gen. Op. No. 90-97, in which this Office stated that a contract between a consumer and an ambulance service for the provision of ambulance services did not constitute an insurance contract; La. Atty. Gen. Op. No. 98-121; La. Atty. Gen. Op. No. 77-1350.
[6] Battle, supra; See also, Mulhearn v. Rose-Neath Funeral Home,Inc., 512 F.Supp. 747 (W.D. La. 1981).